1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

SEAN POWELL,

CASE NO. C17-1573JLR

11

Plaintiff,

ORDER ON DEFENDANT'S
MOTION TO COMPEL
ARBITRATION

12

v.

13

UNITED RENTALS (NORTH
AMERICA), INC.,

14

Defendant.

15

## I.    INTRODUCTION

16
17

Before the court is Defendant United Rentals (North America), Inc.'s ("United

18

Rentals") motion to compel arbitration.  (Mot. (Dkt. # 62).)  Plaintiff Sean Powell

19

opposes the motion.  (Resp. (Dkt. # 66).)  United Rentals filed a reply.  (Reply (Dkt.

20

# 68).)  The court heard oral argument on March 6, 2019 (*see* 3/1/19 Order (Dkt. # 69);

21

Min. Entry (Dkt. # 70)), and the parties subsequently submitted supplemental briefing

22

(Pl. Supp. Br. (Dkt. # 71); Def. Supp. Br. (Dkt. # 72); Def. 2d Supp. Br. (Dkt. # 75).)

1    The court has considered the motion, the parties' submissions concerning the motion, the

2    relevant portions of the record, and the applicable law. Being fully advised, the court

3    DECLINES to rule on United Rentals' motion to compel arbitration and TRANSFERS

4    this action to the United States District Court for the District of Connecticut.

5

## II.    BACKGROUND

6 **A.    Procedural Background**

7    Former plaintiff Ricardo Castillo filed this putative class and collective action on

8    October 23, 2017, alleging claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201,

9    *et seq.* ("FLSA") and Washington state law. (*See* Compl. (Dkt. # 1).) On June 19, 2018,

10    Mr. Castillo filed a motion for leave to file a second amended complaint and withdraw as

11    named plaintiff because, "for personal reasons," he could no longer act as a named

12    plaintiff. (Castillo Decl. (Dkt. # 44-4) ¶ 4.) The court granted Mr. Castillo's motion.

13    (Order (Dkt. # 52).) Mr. Powell was then substituted as a named plaintiff and filed

14    second and third amended complaints. (*See* SAC (Dkt. # 53); TAC (Dkt. # 56).)

15 **B.    Factual Background**

16    United Rentals, an equipment rental company, is headquartered in Connecticut and

17    incorporated in Delaware. (TAC ¶ 17; *see also* Mot. at 2.) Mr. Powell is a Washington

18    State resident who worked as a delivery driver for United Rentals from May 11, 2015, to

19    October 16, 2017, at United Rentals' branches in Seattle, Washington and Woodinville,

20    Washington. (Murphy Decl. (Dkt. # 65) ¶ 3; *see also* Powell Decl. (Dkt. # 66-1) ¶ 4.)

21    The court outlines United Rentals' application process before describing the arbitration

22    agreement at issue.

1    1.  <u>Application Process</u>

2    Mr. Powell applied to work at United Rentals through the company's online

3    application process.  (Powell Decl. ¶ 5.)  According to United Rentals, at the time Mr.

4    Powell submitted his application, any online applicant would have been required to

5    register for a unique user identification and password.  (Mot. at 3; *see also* Marzulla Decl.

6    (Dkt. # 64) ¶ 5.)  Once an applicant created a user ID and password, the applicant would

7    be prompted to "consent to submit all related forms, documents, and information

8    electronically" by way of the applicant's electronic signature.  (Marzulla Decl. ¶ 6.)  Mr.

9    Powell could not have submitted an online application without consenting to use of his

10   electronic signature.  (*Id.* ¶ 7.)

11   Mr. Powell's electronic application materials included a one-and-a-half page

12   agreement concerning the arbitration of employment-related claims ("the Agreement").

13   (*Id.* ¶ 4, Ex. A ("Agreement").)  The employment application software United Rentals

14   used at the time Mr. Powell submitted his application displayed the Agreement "as a

15   standalone document on its own screen."  (Marzulla Decl. ¶ 10.)  At the top of that page

16   was the following message:

17
**PLEASE REVIEW THIS SCREEN CAREFULLY BECAUSE IT
CONTAINS BINDING CONTRACTUAL TERMS THAT AFFECT
18   YOUR LEGAL RIGHTS. BY SELECTING THE "I ACCEPT"
BUTTON BELOW YOU ARE AGREEING TO BE BOUND TO ALL
19   OF THE TERMS CONTAINED ON THIS SCREEN.**

20   (Agreement.)  To proceed with the application process, Mr. Powell would have had to

21   click "Agree" on the page that displayed the Agreement.  (*Id.* at 10.)

22   //

ORDER - 3

1    At the end of the electronic application, Mr. Powell was prompted to enter his

2  electronic signature.  (*Id.* ¶ 11.)  His signature, as well as a timestamp, was then affixed to

3  each section of his application materials, including the Agreement.  (*Id.*)  Mr. Powell

4  does not recall submitting his electronic signature to complete his job application, and he

5  does not recall executing the Agreement.  (Powell Decl. ¶¶ 8-9.)  However, United

6  Rentals' records show that Mr. Powell electronically signed and submitted his application

7  materials, and that his electronic signature was affixed to the Agreement, on April 24,

8  2015, at 3:43 p.m. EST.  (Marzulla Decl. ¶ 11.)

9    2.  <u>The Agreement</u>

10    The Agreement provides that it "is governed by the Federal Arbitration Act, to the

11  maximum extent permitted by applicable law."  (Agreement § A.)  It requires that United

12  Rentals and the applicant-employee "arbitrate any and all disputes, claims, or

13  controversies . . . against the other that could be brought in a court," including claims

14  under the FLSA and related state and local laws.  (*Id.*)  The Agreement also includes an

15  express waiver of class, collective, and multi-party actions.  (*Id.* § C.)  Further, the

16  Agreement provides that arbitration will occur "at a mutually convenient time and place

17  within 50 miles of the location where [the applicant-employee] last worked . . . for

18  [United Rentals], or such other location as the parties mutually agree."  (*Id.* § D.)

19  Finally, the Agreement includes a clause that vests the District of Connecticut or the state

20  court in Fairfield County, Connecticut with "exclusive jurisdiction" to "interpret[] and

21  enforce[] the terms" of the Agreement.  (*Id.*)  Specifically, the Agreement provides:

22  *//*

The interpretation and enforcement of the terms contained herein, and, if necessary, any request to enforce the decision of the arbitrator, shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut and you hereby consent that such courts be granted exclusive jurisdiction for such purpose.

(*Id.*)

## C.    United Rentals' Motion to Compel Arbitration

United Rentals moves the court to "enforce" the Agreement by compelling Mr. Powell to arbitrate his claims.  (Mot. at 1.)  In addition, United Rentals moves to dismiss Mr. Powell's individual claims and the putative class and collective claims as barred by the Agreement.  (*Id.* at 12.)  Mr. Powell opposes United Rentals' motion on multiple grounds.  As a threshold matter, Mr. Powell argues that, "as a matter of contract, this court is prohibited from hearing" United Rentals' motion because the Agreement expressly provides that only a court in Connecticut may enforce the terms of the Agreement.  (Resp. at 5.)  In the alternative, Mr. Powell asserts that this court, not an arbitrator, must determine questions of arbitrability.  (*Id.* at 6-7.)  Finally, Mr. Powell contends that the Agreement is unenforceable because it is procedurally and substantively unconscionable under Washington law.  (*Id.* at 9-12.)

The court now considers the motion.

## III.    ANALYSIS

### A.    Legal Standard

The Federal Arbitration Act ("FAA") governs arbitration agreements in any contract affecting interstate commerce.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S.

105, 119 (2001); 9 U.S.C. § 2.  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA "reflect[s] both a liberal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).  "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and must enforce them according to their terms."  *Id.* (internal quotation marks and citations omitted).

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties," for an order compelling arbitration.  9 U.S.C. § 4.  On a motion to compel arbitration, the court's role under the FAA is generally "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

**B.    Existence of the Agreement**

At the outset, the court notes that, although Mr. Powell argues that the Agreement is "unenforceable" on unconscionability grounds, he does not contest the making or existence of the Agreement.  (*See* Resp. at 1.)  Moreover, although Mr. Powell attests that he does not recall executing the Agreement, he does not dispute United Rentals' evidence showing that he was presented with a copy of the Agreement during the online

1    application process and that he electronically signed the Agreement on April 24, 2015.

2    (*See* Powell Decl. ¶¶ 8-9; *see also* Agreement.)  Accordingly, the court finds that there is

3    no genuine dispute that Mr. Powell and United Rentals entered into the Agreement.  *See*

4    *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir.

5    1991) ("Only when there is no genuine issue of fact concerning the formation of the

6    [arbitration] agreement should the court decide as a matter of law that the parties did or

7    did not enter into such an agreement.") (quoting *Par-Knit Mills, Inc. v. Stockbridge*

8    *Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

9    **C.    Forum**

10          As a threshold matter, Mr. Powell argues that, "[a]s a matter of contract," the court

11    cannot adjudicate United Rentals' motion to compel arbitration because the Agreement's

12    "the express terms . . . clearly state that only a state or federal court in the State of

13    Connecticut may interpret or enforce [it]."  (Resp. at 1; *see also id.* at 5-6.)  Mr. Powell

14    appears to argue that, given this clause, United Rentals must seek a decision on

15    arbitrability in a state or federal court in Connecticut.  (*See id.* at 6 (arguing that, "if

16    [United Rentals] wishes to enforce the terms of its arbitration agreement, it may only do

17    so in a Connecticut court").)  The court agrees.

18          To begin, the court finds that the clause concerning Connecticut courts functions

19    as a forum selection clause for issues of arbitrability:  it confines disputes on "[t]he

20    interpretation and enforcement" of the Agreement to the state court sitting in Fairfield

21    County, Connecticut and the United States District Court for the District of Connecticut.

22    (*See* Agreement § D); *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578,

1    582 (10th Cir. 1997) (noting that forum selection clauses "clearly confine litigation to

2    specific tribunals"); *see also Integrated Health Res., LLC v. Rossi Psychological Grp.,*

3    *P.A.*, 537 F. Supp. 2d 672, 675 (D.N.J. 2008) ("Even contractual provisions which

4    specify only that the parties agree to submit to a particular 'jurisdiction' . . . are routinely

5    recognized as unambiguously creating a forum selection clause.").  Federal law governs

6    the enforcement of forum selection clauses.  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858

7    F.2d 509, 513 (9th Cir. 1988).  Under federal law, forum selection clauses are

8    "presumptively valid" and "should be honored 'absent some compelling or countervailing

9    reason.'"  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting

10   *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)).

11          Here, neither party challenges the validity of the forum selection clause.  Mr.

12   Powell argues that Agreement's arbitration provisions are not enforceable, but he does

13   not contend that the forum selection clause itself is invalid for reasons of fraud,

14   overreaching, or injustice.  (*See generally* Resp.; Pl. Supp. Br.)  To the contrary, Mr.

15   Powell vigorously asserts that the court must honor the forum selection clause and

16   decline to entertain United Rentals' motion to compel arbitration.  (Resp. at 5-6.)  United

17   Rentals, for its part, suggests that the court should compel the parties to arbitration

18   notwithstanding the forum selection clause but does not dispute the clause's validity.

19   (*See* Reply at 2-3; Def. Supp. Br. at 1-2.)  Because neither party has challenged the forum

20   selection clause's presumed validity, the court finds the clause valid and enforceable.

21          The court further concludes that the forum selection clause is mandatory, as

22   opposed to permissive.  "A permissive clause allows suit to be brought in a particular

1   forum, but does not preclude litigation elsewhere"; in contrast, "[a] mandatory clause . . .

2   'clearly require[s] exclusive jurisdiction.'" *Tech. Credit Corp. v. N.J. Christian Acad.*,

3   307 F. Supp. 3d 993, 1007 (N.D. Cal. 2018) (quoting *Hunt Wesson Foods, Inc. v.*

4   *Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)) (emphasis omitted).  The plain

5   language of the Agreement demonstrates that the parties intended to designate the state

6   court sitting in Fairfield County, Connecticut and the United States District Court for the

7   District of Connecticut as the "exclusive" forums for disputes concerning the

8   interpretation and enforcement of the Agreement, not just acceptable ones.  (*See*

9   Agreement § D.)

10         Finally, the court finds that United Rentals' efforts to compel Mr. Powell to

11   arbitrate his claims fall within the scope of the Connecticut forum selection clause.  The

12   scope of the clause hinges upon the phrase "interpretation and enforcement."  (*See*

13   Agreement § D.)  "Interpretation" is "[t]he determination of how a text most fittingly

14   applies to particular facts."  Black's Law Dictionary (10th ed. 2014).  "Enforcement,"

15   meanwhile, is an "act or process of compelling compliance with a[n] . . . agreement."  *Id.*

16   To adjudicate a motion to compel arbitration, a court must interpret the Agreement:  it

17   must ask whether, under the facts of the case and the terms of the Agreement, the parties

18   agreed to arbitrate arbitrability, or, if not, whether the Agreement is valid and

19   encompasses the dispute at issue.  *See, e.g.*, *Chiron Corp.*, 207 F.3d at 1130.  Moreover,

20   should a court find that arbitration is warranted, it must proceed to enforce, or compel

21   compliance with, the Agreement.  In other words, a judicial decision to compel

22   //

1    arbitration plainly requires "[t]he interpretation and enforcement" of the Agreement,

2    matters committed exclusively to courts in Connecticut.  (*See* Agreement § D.)

3        1.  <u>United Rentals' Arguments</u>

4        United Rentals asserts three reasons why the court should entertain Mr. Powell's

5    motion to compel arbitration notwithstanding the forum selection clause.  (Reply at 2-3;

6    *see also* Agreement § D.)  First, United Rentals contends that private parties cannot

7    deprive a court of subject matter jurisdiction by means of a forum selection clause.  (*Id.* at

8    2.)  Second, United Rentals maintains that the parties have functionally "waived" their

9    ability to invoke the forum selection clause.  (*Id.* at 3.)  Specifically, United Rentals

10   asserts that Mr. Powell "has waived any benefit of the forum selection clause by not

11   seeking to transfer venue under 28 U.S.C. § 1404(a)," and that United Rentals has chosen

12   not to "enforce" the clause "for the convenience of the parties."  (*Id.*)  Finally, United

13   Rentals argues that, if the court declines to rule upon its motion, it will frustrate the

14   FAA's purpose of moving arbitrable disputes into arbitration "as quickly and easily as

15   possible."  (Def. Supp. Br. at 3.)

16       United Rentals' first argument is correct but irrelevant.  The Agreement's forum

17   selection clause does not divest the court of subject matter jurisdiction over this action.[1]

18   *See, e.g.*, *Kamm v. ITEX Corp.*, 568 F.3d 752, 754 (9th Cir. 2009) ("[T]he Supreme Court

19

20       [1] Subject matter jurisdiction is not at issue here.  The court has federal question jurisdiction over Mr. Powell's FLSA claims and supplemental jurisdiction over his related state law claims.  *See* 28 U.S.C. §§ 1331, 1367; (TAC.)  As a result, the court has jurisdiction over

21   United Rentals' motion to compel arbitration.  9 U.S.C. §§ 3-4; *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (noting that "Section 4 provides for an order compelling arbitration . . . when the federal district court would have

22   jurisdiction over a suit on the underlying dispute").

1    has held that a forum selection clause does not deprive a federal court of subject matter

2    jurisdiction.") (citing *Bremen*, 407 U.S. at 12).  But, "a contractual forum selection clause

3    challenges venue, not subject matter jurisdiction."  *Banco de Mexico v. Orient Fisheries*,

4    No. 2:07-CV-07043 GAF (AJWx), 2010 WL 11519508, at *3 (C.D. Cal. June 28, 2010)

5    (citing *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).  In other

6    words, the court cannot ignore the forum selection clause simply because the court has

7    subject matter jurisdiction.

8         United Rentals' second argument—that Mr. Powell has waived his ability to

9    invoke the forum selection clause by failing to move to transfer venue to Connecticut—is

10   also unpersuasive.  Waiver of a forum selection clause "will only be found where there is

11   clear, decisive, and unequivocal conduct manifesting such an intent."  *Neighborcare*

12   *Health v. Porter*, No. C11-1391JLR, 2012 WL 13049188, at *4 (W.D. Wash. July 24,

13   2012) (citing *Central Ariz. Water Conservation Dist. v. United States*, 32 F. Supp. 2d

14   1117, 1138 (D. Ariz. 1998)).  For example, courts have found that a party waives a forum

15   selection clause where the party sues to enforce a contract in an unauthorized forum,

16   *Unity Creations, Inc. v. Trafcon Indus., Inc.*, 137 F. Supp. 2d 108, 111 (E.D.N.Y. 2001),

17   or "sit[s] on its forum selection rights . . . until such time as things go unfavorably," *E. &*

18   *J. Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1162-63 (E.D. Cal.

19   2005).  The party asserting waiver bears the burden of proving waiver by clear and

20   convincing evidence.  *Neighborcare Health*, 2012 WL 13049188, at *4.

21        Here, United Rentals fails to show that Mr. Powell has waived the forum selection

22   clause.  Far from manifesting intent to disregard the forum selection clause, Mr. Powell

1   vigorously asserts that the court must give effect to the clause—a position at odds with

2   United Rentals' contention that the parties have "mutually declin[ed] to enforce the

3   choice-of-venue clause." (Reply at 3; Resp. at 5-6.) Moreover, Mr. Powell explains that

4   he has not filed a motion to transfer venue because he believes the forum selection clause

5   does not encompass his underlying wage-and-hour claims. (*See* Pl. Supp. Br. at 1-2.)

6   The court need not reach the merits of this position but is persuaded that Mr. Powell has

7   made a good faith argument in support of his contention that the court must heed the

8   forum selection clause despite his failure to file a motion to transfer venue.

9        Finally, United Rentals argues that giving effect to the forum selection clause

10  would thwart the purpose of the FAA: the speedy and efficient resolution of motions to

11  compel arbitration. (Def. Supp. Br. at 3.) United Rentals rightly emphasizes that

12  Congress enacted the FAA because it wanted "to move the parties to an arbitrable dispute

13  out of court and into arbitration as quickly and easily as possible." *Dees v. Billy*, 394

14  F.3d 1290, 1291-92 (9th Cir. 2005) (citation and quotation marks omitted); (*see also* Def.

15  Supp. Br. at 3.) Yet, the FAA also reflects Congress's intent that courts put arbitration

16  agreements "on an equal footing with other contracts" and enforce them according to

17  their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010). Here, the

18  terms of the Agreement are clear: only the designated courts in Connecticut may

19  determine arbitrability. (Agreement § D.) The court cannot wave away the forum

20  selection clause simply because it would be more speedy or convenient for this court to

21  decide the motion to compel arbitration. *See Pinkus v. Sirius XM Radio, Inc.*, 255 F.

22  Supp. 3d 747, 751 (N.D. Ill. 2017) (emphasizing that "[c]onsiderations of judicial

1   economy alone do not permit [courts] to ignore a presumptively valid forum selection

2   clause") (alterations in original) (quoting *Global Quality Foods, Inc. v. Van Hoekelen*

3   *Greenhouses, Inc.*, No. 16-cv-00920-LB, 2016 WL 4259126, at *5 (N.D. Cal. Aug. 12,

4   2016)); *cf. Atl. Marine Constr. Co. v. United States Dist. Ct. for the W. Dist. of Tex.*, 571

5   U.S. 49, 63 (2013) (stating that "a valid forum-selection clause should be given

6   controlling weight in all but the most exceptional cases").

7           In sum, none of United Rentals' arguments persuades the court that, despite the

8   Agreement's forum selection clause, the court may decide United Rentals' motion to

9   compel arbitration.  The court now considers how to best effectuate the forum selection

10  clause.

11           2.  Enforcement of the Forum Selection Clause

12          In their briefing and at oral argument, the parties discussed two ways the court

13  may give effect to the Agreement's forum selection clause.  First, the court could *sua*

14  *sponte* transfer the entire action to the District of Connecticut.  (*See* Pl. Supp. Br. at 3-5

15  (arguing against *sua sponte* transfer); Def. 2d Supp. Br. at 1-5 (arguing that transfer

16  would not be inappropriate).)  Second, the court could deny United Rentals' motion to

17  compel arbitration but stay this action to allow United Rentals to file an action in a court

18  in Connecticut to determine whether Mr. Powell's claims are arbitrable.  (*See* Def. 2d

19  Supp. Br. at 1.)  The court finds that transfer is the more appropriate option.

20          A forum selection clause is properly enforced through 28 U.S.C. § 1404(a), which

21  codifies the doctrine of *forum non conveniens* "for the subset of cases in which the

22  transferee forum is within the federal court system."  *Atl. Marine*, 571 U.S. at 60; *see also*

28 U.S.C. § 1404(a).  Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it may have been brought or to any district . . . to which all parties have consented."  28 U.S.C. § 1404(a).  Typically, a forum selection clause is enforced upon a motion to transfer.  *See, e.g.*, *Atl. Marine*, 571 U.S. at 59.  However, a court may, under Section 1404(a), *sua sponte* transfer a case to a contractually chosen federal forum.  *See Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1090 (D. Haw. 2011) ("The court may transfer venue *sua sponte*, so long as the parties are first given an opportunity to present their views on the issue.") (citing *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986)); *U.S. ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of Am.*, No. 3:14-cv-1017 (VAB), 2015 WL 4393576, at *5 (D. Conn. July 16, 2015) ("While forum selection clauses are typically enforced upon a party's motion, the Court may *sua sponte* transfer cases to enforce forum selection clauses under section 1404(a).").

Mr. Powell argues that *sua sponte* transfer is inappropriate because his statutory wage-and-hour claims fall outside the scope of the Agreement's forum selection clause. (Pl. Supp. Br. at 2.)  Specifically, Mr. Powell asserts that the forum selection clause is "expressly limited to the 'interpretation and enforcement' of the [A]greement."  (*Id.*; *see also* Agreement § D.)  A court may not transfer an action pursuant to a forum selection clause when the plaintiff's claims fall outside the scope of the forum selection clause. *See In re Orange, S.A.*, 818 F.3d 956, 962 (9th Cir. 2016); *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).  As the Ninth Circuit recently explained,

1    parties must litigate a case in the forum specified in a forum selection clause only "if

2    there [i]s anything factually within the claims that require[s] [the court] to interpret" the

3    agreement that contains the clause. *In re Orange*, 818 F.3d at 963. By extension, claims

4    fall outside the scope of a forum selection clause when the "claims [do] not require

5    analyzing [the agreement] to decide them." *Id.* at 962.

6        The court sees the logic of Mr. Powell's argument: assuming Mr. Powell's

7    wage-and-hour claims are not found to be arbitrable, those claims would not be

8    substantively related to, or governed by, the Agreement. Ultimately, however, Mr.

9    Powell's argument is unavailing. Where a defendant asserts a contractual defense to a

10   plaintiff's statutory claims, and the contract at issue includes a forum selection clause,

11   "the forum selection clause is 'inextricably intertwined with the construction and

12   enforcement of the parties' agreement' and therefore applies." *Sun v. Kao*, 170 F. Supp.

13   3d 1321, 1324 n.1 (W.D. Wash. 2016) (quoting *Arreguin v. Glob. Equity Lending, Inc.*,

14   No. C 07-06026 MHP, 2008 WL 4104340, at *4 (N.D. Cal. Sept. 2, 2008)). Here, United

15   Rentals asserts the contractual defense that Mr. Powell agreed to arbitrate all claims

16   arising under the FLSA and related state laws. (*See generally* Mot.; Am. Answer (Dkt.

17   # 58) ¶ 16.) As a result, a court must interpret the Agreement's arbitration provisions

18   before it may address the merits of Mr. Powell's claims. *See Sun*, 170 F. Supp. 3d at

19   1324 n.1. Mr. Powell's claims thus fall within the scope of the forum selection clause.[2]

20

21       [2] In his supplemental brief, Mr. Powell cites various cases in which courts found
choice-of-law provisions inapplicable to plaintiffs' wage-and-hour claims. (Pl. Supp. Br. at 1-3.)
Mr. Powell cites these cases to support his argument that the Agreement's forum selection clause

22   does not encompass his statutory causes of action. (*Id.*) But choice-of-law provisions are

1    Additionally, Mr. Powell contends that the private interest factors articulated in

2    *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000), weigh heavily

3    against transfer.  (Pl. Supp. Br. at 3-4.)  A district court ordinarily considers public and

4    private interest factors when considering whether to transfer an action under Section

5    1404(a).  *See Jones*, 211 F.3d at 498 (articulating a nine-factor balancing test based

6    predominantly on the convenience of the parties and witnesses).[3]  But, "[t]he calculus

7    changes" when there is a valid forum selection clause.  *Atl. Marine*, 571 U.S. at 63.  In

8    that case, "[a] court . . . must deem the private-interest factors to weigh entirely in favor

9    of the preselected forum" and "may consider arguments about public-interest factors

10   only."  *Id.* at 64.  Such public interest factors "may include the administrative difficulties

11   flowing from court congestion; the local interest in having localized controversies

12   decided at home; and the interest in having the trial of a diversity case in a forum that is

13   at home with the law."  *Id.* at 62, n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235,

14   241 n.6 (1981)) (quotation marks and alteration omitted); *see also Nat'l Prods., Inc. v.*

15   *Wireless Accessory Sols., LLC*, No. 15-2024JLR, 2018 WL 1709494, at *2 (W.D. Wash.

16

17   "separate and distinct" from forum selection clauses.  *Multimin USA, Inc. v. Walco International,*
     *Inc.*, No. CV F 06-0226 AWI SMS, 2006 WL 1046964, at *6 (E.D. Cal. Apr. 11, 2006).  No

18   choice-of-law issues are present here, and the cases Mr. Powell cites are not relevant to the issue
     before the court, *i.e.*, whether to transfer this case in accordance with a mandatory forum
     selection clause.

19

20   [3] The *Jones* test balances the following factors:  "(1) the location where the relevant
     agreements were negotiated and executed, (2) the state that is most familiar with the governing

21   law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the
     contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the
     costs of litigation in the two forums, (7) the availability of compulsory process to compel

22   attendance of unwilling non-party witnesses, . . . (8) the ease of access to sources of proof," and
     (9) the public policy considerations of the forum state.  *Jones*, 211 F.3d at 498-99.

1   Apr. 8, 2018) (listing additional public interest factors, including judicial efficiency).

2   Under *Atlantic Marine*, the public interest factors will rarely limit transfer because, "[i]n

3   all but the most unusual cases, . . . the interest of justice is served by holding parties to

4   their bargain." *Atl. Marine*, 571 U.S. at 66. "[T]he practical result is that forum-selection

5   clauses should control except in unusual cases." *Id.* at 64.[4]

6          Because the Agreement includes a valid forum selection clause, the court must

7   deem the private interest factors Mr. Powell emphasizes to weigh entirely in favor of

8   transfer to Connecticut. *Id.* at 64. In addition, Mr. Powell does not show that the public

9   interest considerations are so exceptional as to warrant ignoring the forum selection

10  clause. Indeed, in opposing transfer, Mr. Powell altogether fails to address the public

11  interest factors a court must consider under *Atlantic Marine*. (*See generally* Pl. Supp. Br.

12  at 3-4); *see also Atl. Marine*, 571 U.S. at 62, n.6. In any event, this is not the "unusual

13  case[]" in which transfer is inappropriate notwithstanding a forum selection clause. *See*

14  *Atl. Marine*, 571 U.S. at 64. Transferring this action will not give rise to particular

15  administrative difficulties. *See Piper Aircraft*, 454 U.S. at 241 n.6. Although the

16  Western District of Washington has a local interest in affording a forum to residents like

17  Mr. Powell, *see id.*, the District of Connecticut has a similar interest in providing United

18  Rentals, a Connecticut resident, a forum to enforce its contracts. Most important, "the

19

20  _____

    [4] The Supreme Court decided *Atlantic Marine* on a motion to transfer venue. Courts that

21  have *sua sponte* transferred cases pursuant to forum selection clauses, however, have applied the
    *Atlantic Marine* framework. *See, e.g.*, *QSR Steel Corp.*, 2015 WL 4393576, at *5-9; *Eisaman
    Contract Assocs., Inc. v. Smith Sys. Mfg., Co.*, No. 2:17-cv-00061-RCM, 2017 WL 2378123, at

22  *5 (W.D. Penn. June 1, 2017); *McCusker v. hibu PLC*, No. 14-5670, 2015 WL 1600066, at *5
    (E.D. Penn. Apr. 8, 2015).

1    interest of justice" is best served by holding Mr. Powell and United Rentals to their

2    contractually agreed upon forum.  *See Atl. Marine*, 571 U.S. at 66.

3          Finally, the court notes that other courts faced with forum selection clauses vesting

4    specific tribunals with exclusive authority to determine arbitrability have concluded that

5    transfer to the selected tribunal was warranted where the defendant sought to compel

6    arbitration.  For example, in *Blount v. Northrop Grumman Information Technology*

7    *Overseas, Inc.*, No. 14-cv-498-CAB (WVG), 2014 WL 12577033 (S.D. Cal. July 23,

8    2014), the district court addressed an employment agreement that mandated arbitration of

9    all employment-related claims and vested "the state and federal courts in Virginia" with

10   exclusive jurisdiction to determine "the arbitrability of any dispute" arising under the

11   agreement.  *Id.* at *1.  The defendant moved to compel arbitration of the plaintiff's claims

12   or, in the alternative, transfer venue to a United States District Court in Virginia.  *Id.* at

13   *2.  After finding the forum selection clause enforceable, the court transferred the action

14   to the Eastern District of Virginia on the ground that, under the employment agreement,

15   "determinations as to arbitrability must be made by a state or federal court in Virginia."

16   *Id.*; *see also Finucane Enters., Inc. v. Arizant Healthcare, Inc.*, No. 05-CV-2163 JWL,

17   2005 WL 8160523, at *3-5 (D. Kan. Aug. 25, 2005) (granting the defendants' motion to

18   transfer venue to the District of Minnesota because the agreement at issue vested "courts

19   located in the State of Minnesota" with "exclusive jurisdiction" to determine issues of

20   arbitrability).

21         Here, too, transfer will effectuate the parties' contractual agreement to entrust a

22   particular forum with "exclusive jurisdiction" to determine threshold issues of

1    arbitrability.   (*See* Agreement § D.)  The court thus TRANSFERS this action to the

2    United States District Court for the District of Connecticut.

3    **D.    Mr. Powell's Request for a Stay**

4        Mr. Powell requests that the court stay its transfer order that he may seek appellate

5    review under 28 U.S.C. § 1292 or a writ of mandamus.  (Pl. Supp. Br. at 4-5.)  The court

6    finds that a stay is unwarranted.  First, interlocutory appeals are appropriate "only in

7    extraordinary cases where decision of an interlocutory appeal might avoid protracted and

8    expensive litigation" and are "not intended merely to provide review of difficult rulings

9    in hard cases."  *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966).  Moreover,

10    the Ninth Circuit Court of Appeals has "long held that in extraordinary circumstances

11    involving a grave miscarriage of justice, [it] ha[s] power via mandamus to review an

12    order transferring a case to a district court in another circuit," even after the case has been

13    docketed in the transferee court.  *NBS Imaging Sys., Inc. v. United States Dist. Ct. for the*

14    *E. Dist. of Cal.*, 841 F.2d 297, 297 (9th Cir. 1988).  As a result, Mr. Powell is not

15    precluded from seeking mandamus in the Ninth Circuit even after transfer is complete.

16    *See id.*

17                            **IV.    CONCLUSION**

18        For the foregoing reasons, the court DECLINES to rule on United Rentals' motion

19    to compel arbitration (Dkt. # 62) and TRANSFERS this action to the United States

20    District Court for the District of Connecticut.  The court DENIES Mr. Powell's motion to

21    //

22    //

stay the transfer order.  The court DIRECTS the Clerk to transfer this action in

accordance with Local Civil Rule 3(i) and close this file.

     Dated this 3rd day of April, 2019.

The Honorable James L. Robart
U.S. District Court Judge