UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SEAN POWELL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED RENTALS (NORTH AMERICA), INC.,<br><br>Defendant. | Case No.: 3:19-cv-00599 (VAB)<br><br>Date of Motion: June 23, 2020 |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT
AND DISMISSAL OF THE CASE AND INCORPORATE MEMORANDUM OF LAW[1]**

Pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, Plaintiff Sean Powell and Opt-in Plaintiff Ricardo Castillo (collectively, "Plaintiffs") and Defendant United Rentals (North America), Inc. ("Defendant") (Plaintiffs and Defendant are collectively referred to as the "Parties"), through their respective counsel, hereby move the Court to enter an order approving their Joint Motion for Final Approval of Settlement and Dismissal of the Case. Declaration of Carolyn H. Cottrell ("Cottrell Decl."), Ex. A, Final Settlement Agreement and Complete Waiver/Release ("Settlement"). The Settlement secures a fair, adequate, and reasonable result for Plaintiffs and resolves a *bona fide* dispute between the parties as to whether overtime

---

[1] Because this motion is filed jointly and the parties do not dispute the law as set forth herein, the parties have incorporated their joint memorandum of law into this motion.

1

pay was properly paid to Plaintiff Sean Powell and Opt-in Plaintiff Ricardo Castillo. Such a compromise is eminently fair and reasonable. The Court should approve this Settlement because the Settlement was achieved in an adversarial context, after extensive discovery; the Collective Members are represented by counsel who could protect their rights; and the Settlement reflects a fair and reasonable resolution of a *bona fide* dispute under the FLSA.

Specifically, Plaintiffs request that this Court: (1) find that the resolution of this case as embodied in the Settlement is within the range of fair, adequate, and reasonable settlement; (2) grant the dismissal of Plaintiffs' individual claims asserted therein against Defendant with prejudice; and (3) grant the dismissal of Plaintiffs' claims on behalf of other proposed Collective and putative Class members, without prejudice. Accordingly, Plaintiffs and Defendants jointly request that the Court enter an Order For Approval of Settlement and Dismissal of the Case.

## I.   BACKGROUND

Ricardo Castillo ("Castillo") filed this Class and Collective Action Complaint against Defendant on October 23, 2017 in the Western District of Washington to challenge Defendant's alleged violations of the FLSA, the Washington Minimum Wage Act, Revised Code of Washington §§ 49.46 *et seq.* ("WMWA")*,* and other laws of the State of Washington. ECF 1. On July 17, 2018, Ricardo Castillo filed a Second Amended Complaint to substitute himself with Plaintiff Sean Powell ("Powell") as the named representative of the putative Class and Collective, leaving Ricardo Castillo's individual claims as an opt-in plaintiff intact. *See* ECF 53, Second Amended Compl.; ECF 7, Notice of Filing of Consent to Join Collective Action (of Ricardo Castillo); ECF 35, Notice of Filing of Consent to Join Collective Action (of Sean Powell). On August 6, 2018, Plaintiffs filed a Third Amended Complaint to specify the exact

2

workweeks wherein Plaintiff was subject to alleged overtime violations. *See* ECF 56, Third Amended Compl.

Plaintiffs allege that Defendant denied them and all putative Class and Collective members proper payment of all wages (including minimum wage, overtime, and improper deductions) as required by the FLSA; failed to authorize, permit, or make available rest periods and meal periods as required by the WMWA; and failed to pay all amounts due upon voluntary or involuntary termination as required under Washington law *See id.* Defendant denies all of Plaintiffs' claims and allegations, specifically including Plaintiffs' class and collective claims and allegations. ECF 58.

On November 6, 2018, Defendant filed a Motion to Compel Arbitration and to Dismiss. ECF 62. At the close of briefing and oral argument, Judge Robart issued an order declining to rule on Defendant's motion, and *sua sponte* transferred the entire action to this Court. *See* ECF 76. After the action was transferred to this Court, on July 16, 2019, Defendant filed a Motion to Stay the Case and Refer Plaintiffs' Claims to Individual Arbitration, which Plaintiffs opposed. *See* ECF 92, 95, 102. Ultimately, on March 2, 2020, the Court denied Defendant's motion without prejudice to renewal in the event the case did not otherwise resolve due to the parties' ongoing settlement discussions. ECF 110.

From June 2019 to April 2020, the Parties met and conferred to informally resolve Plaintiffs' claims. Cottrell Decl., ¶ 8. Following extensive negotiation at arms-length by counsel experienced in wage and hour litigation, the settlement was reached in February 2020, finalized in April 2020, and executed in June 2020, based on the specified terms of the fully executed Settlement Agreement, which is attached as Exhibit A to the Declaration of Carolyn H. Cottrell. *Id.* The Settlement Agreement provides that: Plaintiff Powell receive $25,000; Opt-in Plaintiff

3

Castillo receive $13,000; Plaintiffs' Counsel receive $62,000 in fees and costs, subject to court approval; the Parties are subject to a mutual release of claims; and that Plaintiffs will dismiss their individual claims with prejudice and the putative class and representative claims Plaintiff Powell brings on behalf of allegedly similarly situated employees without prejudice. *Id.,* ¶ 9. The Settlement Agreement addresses all the major issues in the Complaint and requires that Plaintiffs file the instant motion. *Id.* The Settlement Agreement does not purport to bind any absent class member or any putative Collective member, and is made without prejudice to the claims, if any, which might be asserted by any individual or entity other than the named parties in this action. *Id.*

As of the date of this filing, no other putative Collective members have opted-in to this matter, and class certification of the putative Class has not been briefed. *See generally,* Docket.

## II.     RELIEF SOUGHT

Pursuant to Rule 41(a)(2), the Parties respectfully request that the Court, having considered the facts set forth in the Leimbach Declaration, attached hereto, the Settlement and this Stipulation, approve the Settlement and dismissal of the above-captioned action.

## III.     ARGUMENT

### A. The Settlement Agreement Is Fair And Reasonable.

Settlements are favored in law, including those resolving wage claims under the FLSA. *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 116 (1946); *Lynn's Food Stores, Inc. v. United States* ("*Lynn's Food*"), 679 F.2d 1350, 1354 (11th Cir. 1982) (if the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation."). Settlements of FLSA claims require approval from the Court or the Secretary of Labor. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 200, 206 (2d Cir. 2015) ("Rule 41(a)(1)(A)(ii) stipulated dismissals

4

settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."); *Lynn's Food*, 679 F.2d at 1352-55.

District courts in this Circuit typically evaluate whether a settlement agreement is fair and reasonable by considering the totality of the circumstances, which include factors outlined in *Wolinsky v. Scholastic Inc.*: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)). In determining whether a settlement is fair and reasonable, other courts also consider whether there was a bona fide dispute, the reasonableness of the compromise, and the breadth of the release of claims. *Luo v. Zynga Inc.,* 2014 WL 457742, at *2-3 (N.D. Cal. Jan. 31, 2014). Application of all of these factors to the circumstances here demonstrates that the Settlement Agreement is fair and reasonable.

First, Plaintiffs' range of possible recovery was considered throughout the negotiation process for settlement. Cottrell Decl., ¶ 10. This range, however, was dependent on multiple legal and factual assumptions, that would present substantial litigation risks and increased fees and expenses moving forward to trial. *Id*. Under Plaintiffs' Counsel's damages model, the largest calculable recovery, based on data casted in the light most favorable to Plaintiffs, provided a potential exposure of $63,000 to Plaintiff Powell and $119,000 to Opt-in Plaintiff Castillo. *Id*. Plaintiffs' counsel computed these figures using assumptions – which were also assumed would be based on largely testimonial evidence – that Plaintiffs were entitled to: pay for all meal and

5

rest periods as they were alleged to be "on-duty," all overtime payments for any work completed during such noncompliant meal and rest periods,[2] all pay for substantial unrecorded time worked by Plaintiffs off-the-clock, and liquidated damages based on the FLSA, RCW 49.52.070, and RCW 49.52.050(2). *Id*. Conversely, United Rentals vigorously disputes that Plaintiffs can establish liability for any of their causes of action and therefore values Plaintiff's ultimately recoverable damages at $0. Ultimately, given the litigation risks moving forward in this action and following consideration of the difficulties in proving the majority of Plaintiffs' damages, the Parties agreed that the individual payments of $25,000 to Plaintiff Powell and of $13,000 to Opt-In Plaintiff Castillo, along with mutual releases, represents a reasonable and fair result.

Second, the proposed Settlement will enable the Parties to "avoid anticipated burdens and expenses" should the litigation proceed forward. Establishing the claims and defenses of both Parties would require substantial additional written discovery, depositions, and motion practice should the litigation proceed. *Id*., ¶ 11. In particular, substantial testimonial evidence from all Parties would be necessary to both validate and refute Plaintiffs' claims concerning off-the-clock work and meal and rest periods. *Id*. Following such discovery, dispositive motion practice, as

---

[2] *See Pellino v. Brink's Inc.,* 164 Wn. App. 668, 688, 267 P.3d 383 (2011) (ordering that even though employer of armored truck drivers and guards who were "constantly engaged in work activities" during their on-duty meal periods were paid during such time worked, the employer was required to pay again as the remedy for the missed meal periods). *See also Brady v. AutoZone Stores, Inc*., 188 Wn.2d 576, 397 P.3d 120 (2017) (relying on Pellino in finding that an employee asserting a meal break violation can prove a prima facie case by showing he or she did not receive a timely meal break). *Wingert v. Yellow Freight Sys., Inc.,* 146 Wn.2d 841, 50 P.3d 256 (2002) (noting employees are entitled to damages for missed rest breaks even when they have been paid for all hours worked because otherwise, the employer receives 10 extra minutes of labor for free); *Washington State Nurses Ass'n v. Sacred Heart Med. Ctr*., 175 Wn.2d 822, 287 P.3d 516 (2012), the Washington Supreme Court found that employers must pay for missed rest breaks as additional time worked., and if the additional work time is pushes the employee beyond 40 hours of completed for the week, or the employee has already worked more than 40 hours in the week, such missed rest breaks must be compensated at the overtime rate).

well as motions for class certification and conditional certification, would be necessary and would greatly increase the burdens and expenses on the Parties moving forward. *Id*.

Third, as mentioned *supra,* the continued existence of factual and legal questions place the outcome of the litigation in doubt. The Parties continue to dispute nearly every factual and legal issue in the case. In particular, the issue of whether any if not all of the Plaintiffs' claims are subject to arbitration remains in question. Should the Court grant Defendant's renewed motion to compel arbitration, all class and collective actions would be dismissed, and Plaintiffs' remaining individual claims would need to be arbitrated. *Id*., ¶ 12. The Parties would then be required to expend significant time and resources to arbitrate these individual claims. *Id.* Moreover, because the Plaintiffs' claims arise in part under the FLSA, this case involves complex legal and factual issues to be determined at trial. *See Holladay v. Burch, Oxner, Seale Co., CPA's, PA*, C/A No. 4:07-cv-03804-RBH, 2009 WL 614783 (D.S.C. Mar. 6, 2009) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981)) ("FLSA claims typically involve complex mixed questions of fact and law . . . ."). The outcome of the litigation is uncertain and the risk of continued litigation is significant, including trial, with the expense of litigation ever increasing. Although the Parties have significant disagreement as to the likelihood of Plaintiffs' success on the merits in this case, the Settlement secures a fair, adequate, and reasonable result for Plaintiffs. Cottrell Decl., ¶ 13. The Settlement provides Plaintiffs an immediate recovery, rather than enduring the significant risks and delays of continuing litigation. *Id.* Plaintiffs are satisfied that the component of the monetary settlement represented by their individual claims, while not constituting their total potential monetary recovery under their Counsel's damages model, nevertheless represents a fair result under the Settlement Agreement.

*Id.* Defendant also has received valuable consideration under the Settlement Agreement in the form of Plaintiffs' release of their claims against it. *See* Settlement.

Fourth, the settlement agreement was reached at arms-length negotiations between experienced counsel and does not raise any issues of fraud or collusion. *Id.*, ¶ 14. Counsel of both Parties participated in vigorous back-and-forth negotiations for months before reaching the Settlement. *Id*. The Parties specifically negotiated the settlement awards of Plaintiffs and Plaintiffs' Counsel's fees and costs separately. *Id*.

Further, there was a bona fide dispute between Plaintiffs and Defendant regarding whether and the extent to which Defendant had denied Plaintiff overtime compensation and compensation for allegedly uncompensated time worked off-the-clock, including pay for Defendant's alleged failure to provide Plaintiffs legally compliant meal and rest breaks. In the FLSA context, a bona fide dispute exists if the "suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (quoting *Yue Zhou v. Wang's Restaurant*, 2007 U.S. Dist. LEXIS 60683, 2007 WL 2298046, *1 (N.D. Cal. Aug. 8, 2007)); *Lynn's Food*, 679 F.2d at 1353 n. 8 (requiring "settlement of a bona fide dispute between the parties with respect to coverage or amount due under the [FLSA]"). This is precisely the case here.

Plaintiffs alleged that Defendant failed to compensate them at the statutorily mandated overtime premium rate for hours worked in excess of 40 per week, and failed to compensate them at all for hours it required and/or suffered and permitted them to perform off-the-clock. Defendant continues to deny each of these allegations. Thus, there was a bona fide dispute as to

8

whether and the extent to which Defendant had denied Plaintiffs their statutorily mandated overtime and minimum wages.

Moreover, the terms of the Settlement represent a fair and reasonable resolution of the bona fide dispute. *See* Settlement Agreement. The Settlement Agreement narrowly releases only Plaintiffs' individual claims against Defendant. *See* Settlement Agreement. It does not purport to bind any absent class member to its terms, and is made without prejudice to the claims, if any, which might be asserted by any individual or entity other than the named parties in this action. *Id*. Thus, the Settlement Agreement is fair and reasonable.

### B. The Attorneys Fees and Costs Award Is Reasonable.

Under the FLSA, "a court can award attorney's fees based on either the lodestar calculation—the hourly rate times the number of hours worked—or a percentage of the settlement award . . . ." *Smelser v. Martin's Famous Pastry Shoppe, Inc*., No. 3:17-cv-01813 (MPS), 2019 U.S. Dist. LEXIS 114043, at *7 (D. Conn. July 10, 2019) (quoting *Douglas v. Allied Universal Sec. Servs*., 371 F. Supp. 3d 78, 84-85 (E.D.N.Y. 2019), *reconsideration denied*, No. 17-CV-6093-SJB, 381 F. Supp. 3d 239 (E.D.N.Y. May 30, 2019))). District courts evaluate the reasonableness of these fees and costs provided for in a settlement. *See Cheeks*, 796 F.3d at 206; 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

"There is a strong presumption in favor of finding a settlement [under the FLSA] fair." *Lliguichuzhca v. Cinema 60*, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (reasoning the court is "generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement") (internal quotations and citations omitted). When assessing the reasonableness of

9

attorney's fees in FLSA settlements, courts consider (1) counsel's time and labor;[3] (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations. *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 U.S. Dist. LEXIS 53339, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

In this litigation, Plaintiff Powell and Opt-In Plaintiff Castillo have been represented by experienced counsel who focus on wage and hour class actions. Cottrell Decl., ¶¶ 1-6. SWCK has been recognized as a leading Plaintiffs' firm nationally for their work on behalf of employees in wage and hour litigation. *Id.*, ¶¶ 4-5. The Settlement involves complex provisions of the FLSA and the wage and hour laws of the State of Washington. *Id.*, ¶ 12. Substantial fee awards encourage attorneys to take on risky cases on behalf of clients who cannot pay hourly rates and would therefore not otherwise have realistic access to courts. That access is important for the effective enforcement of public protection statutes, such as the wage laws at issue here. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations."). By incentivizing plaintiff's attorneys to take on risky, high-stakes, and important litigation, and devote themselves to it aggressively and fully, fee awards serve an important purpose and extend the access of top legal

---

[3] The lodestar calculation is used as a cross-check on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50. The Court's analysis is also guided by the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Rosales v. Gerasimos Enters. Inc.*, No, 16-CV-2278 (RA), 2018 U.S. Dist. LEXIS 1230, 2018 WL 286105, at *1 (S.D.N.Y. Jan. 3, 2018) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Counsel seeking fees using the lodestar method "must provide a factual basis for a fee award, typically with contemporaneous time records." *Douglas*, 371 F. Supp. 3d at 84-85 (internal quotation marks omitted).

talent to constituencies such as low-wage workers who would otherwise never be able to litigate against employers, who are themselves represented by top-rated attorneys. *See* Cottrell Decl., ¶¶ 19-20. Accordingly, Plaintiffs' Counsel's expertise and skill in this area of law, coupled with their willingness to take on risky cases and public policy to incentivize plaintiffs' attorneys to take on risky wage and hour cases like this action, justify the fee request.

Plaintiffs' Counsel engaged in a series of actions against Defendant, including conducting discovery and voluminous and costly motion practice, and negotiating settlement which enabled Plaintiffs' Counsel (as well as Defendant) to accurately assess the legal and factual issues – and related risks – that would arise if the case proceeded to trial. *Id.*, ¶¶ 16-18. Plaintiffs and their counsel faced all of these risks, and others, many of which could have resulted in no recovery. *See supra,* Section III.C; Cottrell Decl., ¶ 18. Plaintiffs' Counsel's efforts in pursing the litigation for three years, and their commitment to developing the employees' claims and pursuing the Plaintiffs' recovery in the face of these risks, warrant this fee request. Cottrell Decl., ¶ 18.

Here, the proposed award of $62,000 for Plaintiff's fees and costs are reasonable. Plaintiffs and Plaintiffs' counsel do not get paid from the same fund; that is, Plaintiffs' Counsel's payments are in addition to the settlement payments. "Put another way, this case differs from so called "common fund" cases because Plaintiffs and their counsel are not fighting a zero-sum battle over a fixed pot of money." *See Marsh v. Tauck Inc.,* No. 3:04-CV-220 (WWE), 2008 U.S. Dist. LEXIS 139039, at *8 (D. Conn. Oct. 27, 2008) (granting $1,196,308.00 in attorneys' fees and costs and a total of $75,000 to three plaintiffs).

As detailed in Plaintiffs' breakdown of fees, Plaintiffs' Counsel has spent approximately 600 hours litigating this case, for a current lodestar of $398,534.00, not including all the work remaining to bring this Settlement to a close. *See* Cottrell Decl., ¶¶ 15-16, Ex. B. Plaintiffs'

11

Counsel has also incurred $5,502.89 in costs for reasonable out-of-pocket expenditures that would typically be billed to paying clients in non-contingency matters in the marketplace and include such costs as court costs, copying and printing costs, travel expenses, and computerized research. *See id.*, ¶ 21.

All of these expenses were reasonable and necessary for the successful prosecution of the action, and greatly discounted for purposes of Settlement. Further, Defendant, Plaintiff Powell, nor Opt-In Plaintiff Castillo have objected to this reasonable request for fees and costs. Accordingly, the amount of fees and costs sought to be approved constitutes a reasonable award and should be approved.

Plaintiff's counsel has filed a declaration in support of the request for attorneys' fees listing the hours each attorney worked and that attorney's base hourly rate.

### C. A Rule 41(a)(2) Dismissal Is Appropriate Here.

The purpose of Rule 41(a)(2) is to "freely allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). "A plaintiff's motion under Rule 41(a)(2) for dismissal without prejudice should not be denied absent substantial prejudice to the defendant." *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986); *BD v. DeBuono*, 193 F.R.D. 117, 123 (S.D.N.Y. 2000) ("the presumption in this circuit is that a court should grant a [Rule 41(a)(2)] dismissal … absent a showing that defendants will suffer substantial prejudice as a result", and thus "the focus of the analysis on [this motion] is prejudice to the defendant.").

Courts in this Circuit deciding whether a Rule 41(a)(2) dismissal is appropriate consider the following factors: "(1) the plaintiff's diligence in making the motion; (2) any unduly vexatious conduct in which plaintiff engaged; (3) to what extent an has [sic] action has progressed; (4) the expense of relitigating a dismissed action; and (5) the adequacy of plaintiff's

12

explanation for seeking dismissal." *Thomas v. N.Y. State Dep't of Corr. Servs.*, 2004 U.S. Dist. LEXIS 16573, at *5 (S.D.N.Y. Aug. 18, 2004) (citing *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)). These factors are "not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011).

Further, in determining whether it would be proper to dismiss a claim without prejudice, district courts "enjoy[] broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2)." *Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001); D'Alto v. Dahon Cal., Inc., 100 F.3d 281, 283 (2d Cir. 1996) ("Rule 41(a)(2) dismissals are at the district court's discretion and only will be reviewed for an abuse of that discretion."). In fact, "in most cases a dismissal [without prejudice] should be granted unless the defendant will suffer clear legal prejudice, other than the mere prospect of a subsequent lawsuit, as a result." *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856-57 (11th Cir. 1986) (emphasis in original); *Jones v. Securities & Exchange Commission*, 298 U.S. 1, 19 (1936) ("The general rule is settled for the federal tribunals that a plaintiff possesses the unqualified right to dismiss his complaint . . . unless some plain legal prejudice will result to the defendant other than the mere prospect of a second litigation upon the subject matter."). To determine if there would be legal prejudice, courts must ask whether "the defendant [would] lose any substantial right by the dismissal." *Durham v. Florida E. Coast Ry. Co.*, 385 F.2d 366, 368 (5th Cir. 1967); *see also, D'Alto v. Dahon Cal., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) ("The United States Supreme Court recognized long ago that starting a litigation all over again does not constitute legal prejudice.") (citing *Jones*, 298 U.S. at 19).

A Rule 41(a)(2) dismissal is eminently appropriate here. First, Plaintiffs have not been lax in bringing this request for dismissal. The Parties finalized the Settlement in April 2020, and

13

fully executed the Settlement in June 2020. Second, voluntary dismissal also is not the result of "undue vexatiousness" on the Plaintiffs' part. In fact, the reason for voluntary dismissal is simple: both Parties have settled Plaintiffs' claims and now, under the terms of the Settlement, jointly move to approve the Settlement and dismiss Plaintiffs' individual claims with prejudice. Third, discovery has not yet closed, class certification has not been determined, and trial has yet to be scheduled in this action. Fourth, there will be no duplicative expense caused by dismissing Plaintiffs' individual claims with prejudice as they cannot be re-litigated. Although there may be additional expense caused by this dismissal because putative Class and Collective members' claims may be litigated in the future, "the mere prospect of a subsequent lawsuit" is insufficient to manifest legal prejudice. *See Jones*, 298 U.S. at 19.

## IV.   CONCLUSION

For these reasons, this Court should (1) find that the resolution of this case as embodied in the Settlement is within the range of fair, adequate, and reasonable settlement; (2) grant the dismissal of Plaintiffs' individual claims asserted therein against Defendant with prejudice; and (3) grant the dismissal of Plaintiffs' claims on behalf of other similarly situated employees, without prejudice.

Respectfully submitted this 23rd day of June, 2020.

| | |
|---|---|
| SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS, LLP | DAVIS WRIGHT TREMAINE LLP |
| By: /s/ *Carolyn Hunt Cottrell*_____<br>Carolyn Hunt Cottrell, *Admitted Pro Hac Vice*<br>David C. Leimbach, *Admitted Pro Hac Vice*<br>John J. Nestico, ct 102718<br>2000 Powell Street, Suite 1400<br>Emeryville, CA  94608<br>Phone: (415) 421-7100<br>Email: ccottrell@schneiderwallace.com<br>        dleimbach@schneiderwallace.com<br>        jnestico@schneiderwallace.com<br><br>*Attorneys for Plaintiff, the Putative Class and Collective* | By: */s/ Arthur A. Simpson*_____<br>Sheehan Sullivan, *Admitted Pro Hac Vice*<br>Arthur A. Simpson,  *Admitted Pro Hac Vice*<br>1201 Third Ave, Suite 2200<br>Seattle, WA 98101<br>Telephone: (206) 622-3150<br>Email: sheehansullivan@dwt.com<br>        arthursimpson@dwt.com<br><br>ROCHE PIA LLC<br><br>Brian C. Roche, ct 17975<br>Gerald C. Pia, Jr., ct 21296<br>Two Corporate Drive, Suite 248<br>Shelton, CT  06484<br>Phone: (203) 944-0235<br>Fax: (203) 567-8033<br>broche@rochepia.com<br>gpia@rochepia.com<br><br>*Attorneys for Defendant* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2020, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

> */s/ Carolyn Hunt Cottrell*
> Carolyn Hunt Cottrell, *Admitted Pro Hac Vice*
> 2000 Powell Street, Suite 1400
> Emeryville, CA  94608
> Phone: (415) 421-7100
> Fax: (415) 421-7105
> Email:  ccottrell@schneiderwallace.com

15

4836-8937-3377v.1 0110505-000001